IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

SHERRI ELENZ                                                                                                      PLAINTIFF

v.                                              CIVIL ACTION NO. 3:24-CV-253-SA-RP

STATE FARM FIRE AND CASUALTY COMPANY                     DEFENDANT

ORDER AND MEMORANDUM OPINION

On July 19, 2024, Sherri Elenz filed her Complaint [2] against State Farm in the Circuit Court of Desoto County, Mississippi. State Farm timely removed the case to this Court, premising federal jurisdiction on the basis of diversity. State Farm's Motion for Summary Judgment [35] and Motion to Strike Experts [36] are now before the Court. Having considered the filings, as well as the applicable authorities, the Court is prepared to rule.

*Relevant Background*

On January 3, 2023, a significant storm occurred in Olive Branch, Mississippi. Elenz maintains that the wind from that storm caused damage to her home. Specifically, she contends that she experienced "roof leaks, roof damage, a downed fence, window damage, and damaged personal property." [2] at p. 2. She made a claim with State Farm (her homeowners insurance carrier) on the same day.

Shortly thereafter, Elenz retained Roof and Nail, LLC ("R&N") to evaluate the damage and prepare a repair estimate. According to R&N, the impact of the storm "shifted the gable, causing multiple 2x8 rafters to break away from [the] main structure." [36], Ex. 1 at p. 35. In late January, after an adjuster first visited and inspected the property, State Farm issued to Elenz a payment in the amount of $5,775.29 for structural repairs (though it is not entirely clear what aspect of the damage this payment was related to).

In February 2023, Elenz contends that two individuals from R&N—Justin Hamlett and Christy Gardner—again came to her home for evaluation purposes. Elenz describes as follows the events that occurred:

> R&N entered the attic to determine the scope of work needed and the safety of the roof. Photos were sent to State Farm of the damage to the structure by the storm and it was explained to them that the roof was no longer safe. After a few days, a new adjuster was appointed. This person was Tyrone Cleveland. Mr. Cleveland arrived at the property on February 12, 2023 and confirmed the need for fencing and repairs needed to the roof structure. He contacted supervisor, Regis Young, while on site in the attic of the home and received and confirmed authorization to pay for emergency repairs and secondary housing. R&N undertook to do the structural roof work and Ms. Elenz paid for it in the good faith belief that the money was on its way from State Farm. It never came.

[2] at p. 2-3.

R&N completed a temporary framing repair in the attic for the purpose of stabilizing the structure and preventing further damage until it could be fully repaired. Relying on R&N's recommendation, Elenz ultimately took the position that the entire roof covering as well as the rafters needed to be replaced.

But State Farm ultimately denied the roof claim. In a letter dated May 7, 2023, State Farm advised Elenz that it had concluded that "the condition of the structural framing, including roof decking, rafters, ridge board, and related connections, is the result of installation workmanship at the time of construction." [35], Ex. 10 at p. 1. In other words, State Farm concluded that the damage was preexisting and not covered under Elenz's policy.[1]

This lawsuit followed. In the Complaint [2], Elenz asserts claims for breach of contract, estoppel, and tortious breach of contract against State Farm. She seeks contractual and

---

[1] Although not entirely clear from the parties' filings, State Farm apparently paid Elenz's claim to the extent she sought coverage for the damage to her wooden fence. At a minimum, there appears to be no ongoing dispute between the parties as to whether Elenz is entitled to payment for the fence.

2

extracontractual damages, including punitive damages. Through the present Motions [35, 36], State Farm seeks exclusion of Elenz's experts and summary judgment in its favor.

*Analysis and Discussion*

To support her claims, Elenz designated Jerald Montgomery as a retained expert to testify as to the damage to her home and causation. Elenz also designated Justin Hamlett and Christy Gardner (of R&N) as fact witnesses not specially retained who may be called upon to provide expert testimony. In particular, Elenz's designation provides that Hamlett and Gardner "may be called upon to testify regarding their involvement in the underlying inspections . . . and their roles as estimators, contractors and preparation of the ACV and cost of repair . . . They may also be called upon to testify regarding the report produced shortly after the storm [], as well as repairs that were done to the house to mitigate damages." [36], Ex. 1 at p. 1-2.

State Farm has moved to strike all three experts. Its Motion to Strike [36] and its Motion for Summary Judgment [35] are intertwined, as State Farm essentially contends that since all three experts should be stricken and Elenz's claims necessarily rely on expert testimony, the claims should be dismissed.

Because the estoppel and tortious interference with contract claims, as well as Elenz's request for extracontractual and punitive damages, can easily be dismissed, the Court will address them first.

In its Motion for Summary Judgment [35], State Farm argued for dismissal of Elenz's claims for estoppel and tortious breach of contract, as well as her claims for extracontractual and punitive damages. As to the tortious breach of contract claim and Elenz's related request for extracontractual and punitive damages, State Farm contends that Elenz has come forward with

3

nothing to establish that it lacked an arguable basis for its decision. And as to the estoppel claim, State Farm contends it is foreclosed by the clear policy language.

The Court need not set forth State Farm's position as to these issues in any further detail because Elenz wholly failed to address State Farm's arguments in her Response Memorandum [47]. She has therefore abandoned those claims. *See, e.g.*, *Johnson v. Univ. of Miss.*, 2022 WL 164545, at *5 (N.D. Miss. Jan. 18, 2022) (quoting *City of Canton v. Nissan N. Am, Inc.*, 870 F. Supp. 2d 430, 437 (S.D. Miss. 2012)) ("Failure to address a claim results in the abandonment thereof."); *Roland v. Humphreys Cnty., Miss.*, 2022 WL 141855, at *4 (N.D. Miss. Jan. 14, 2022); *see also Young v. Freeport-McMoRan Oil & Gas, LLC*, 2019 WL 1925112, at *1 (E.D. La. Apr. 30, 2019) (citing *Jones v. Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996)) ("The district court has no duty to survey the entire record in search of evidence to support a non-movant's position.").

Elenz's claims for estoppel and tortious breach of contract, as well as her request for extracontractual and punitive damages, are DISMISSED.[2]

The only remaining claim is Elenz's breach of contract claim pertaining to the roof damage. In order to fully grasp State Farm's position in support of summary judgment, additional information, including an overview of the policy, is necessary.[3]

As to the damages that Elenz can potentially recover, the policy in pertinent part provides that "until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown

---

[2] Notwithstanding the Court's finding that there appears to be no ongoing dispute concerning Elenz's claim for damage to her fence, she has abandoned any such claim for the same reason, as she did not address State Farm's arguments for summary judgment on that point.

[3] The Court notes that State Farm's argument as to damages is separate from its causation argument. State Farm does not concede that Elenz can establish causation, but for the reasons explained more fully hereinafter, the Court need not address it.

in the Declarations, not to exceed the cost to repair or replace the damaged part of the property[.]" [35], Ex. 8 at p. 42. Here, there is no dispute that Elenz has *not* actually completed the necessary repairs to her roof, thus her recovery is limited to actual cash value.

Thus, the policy's definition of actual cash value is of critical importance. It provides as follows:

> 1. "*actual cash value*" means the value of the damaged part of the property at the time of loss, calculated as the estimated cost to repair or replace such property, less a deduction to account for pre-loss depreciation. For this calculation, all components of this estimated cost including, but not limited to:
>
>    a. materials, including any tax;
>    b. labor, including any tax; and
>    c. overhead and profit;
>    are subject to depreciation.
>
>    The depreciation deduction may include such considerations as:
>
>    a. age;
>    b. condition;
>    c. reduction in useful life;
>    d. obsolescence; and
>    e. any pre-loss damage including wear, tear, or deterioration;
>    of the damaged part of the property.

[35], Ex. 8 at p. 25.

While the parties agree that Elenz's recovery is limited to actual cash value, their point of disagreement is whether Elenz has come forward with sufficient evidence to place that issue before the jury. Particularly pertinent to this analysis is the potential testimony of Hamlett and Gardner.[4] As to them, Elenz's designation provides:

---

[4] State Farm attacks the opinions and report of Jerald Montgomery—Elenz's other expert—but his proposed testimony pertains to damage to the home and causation. It is irrelevant to the damages issue.

> [They] may be called upon to testify regarding their involvement in the underlying inspections of the home at issue in this case after the storm and damage and their roles as estimators, contractors and preparation of the ACV and cost of repair required for Ms. Elenz'[s] home.

[36], Ex. 1 at p. 1.

State Farm contends that although Elenz's designation states that Hamlett and Gardner will provide testimony as to actual cash value, the sole estimate attached to the designation contains only replacement cost estimates—it does *not* include a determination of actual cash value. In particular, even though Hamlett and Gardner could testify as to replacement cost, they have provided no opinion on depreciation, which is a necessary component of the actual cash value calculation. According to State Farm, because Hamlett and Gardner have provided no opinion on depreciation and Elenz has designated no other expert to testify as to depreciation, she cannot put on proof to support her damages claim, warranting summary judgment.

Notably, the District Court for the Southern District of Mississippi has addressed this issue recently. *See Hebbler v. State Farm Fire and Cas. Co.*, 2024 WL 5161857 (S.D. Miss. Dec. 18, 2024). In *Hebbler*, the plaintiffs made a claim under their homeowners policy after their home was damaged by Hurricane Ida. *Id*. at *1. After their insurer, State Farm, concluded that the amount of the sustained damage was less than the plaintiffs' deductible and refused to make payment, the plaintiffs filed suit. *Id*. In pertinent part, the report of the plaintiffs' sole expert, Rich Lyon, "valued the damage to Plaintiffs' property at $144,661.05, *with no amount specified for depreciation*." *Id*. (emphasis added). In addition to seeking to strike Lyon's proposed testimony on other grounds, State Farm argued that his failure to address depreciation was in and of itself fatal to the plaintiffs' claims for actual cash value, specifically arguing that "Lyon does not offer any opinions as to

6

depreciation, so even if his reports were not excluded, [State Farm] would still be entitled to summary judgment." *Id*. at *2.

In analyzing State Farm's arguments, the district court emphasized that, for unrepaired items, the policy clearly provided that "Defendant will only compensate the 'actual cash value,' meaning the cost to repair or replace it less any depreciation in its value before the loss occurred." *Id*. at *5 (citation omitted). Then, the court concluded that the plaintiffs' lack of any expert testimony on depreciation precluded recovery for their breach of contract claim as to any unrepaired items, reasoning as follows:

> Plaintiffs concede that they have not designated an expert to offer an opinion on depreciation. This alone is fatal to their claim for damages to any unrepaired items. *See Jackson v. State Farm Fire & Cas. Co.*, 2024 WL 1183670, at *6 (S.D. Miss. Mar. 19, 2024) (dismissing Plaintiffs' claiming for unrepaired items because Plaintiffs lacked expert witness testimony "to establish depreciation, even though courts generally require expert testimony to establish depreciation"); *Penthouse Owners Ass'n v. Certain Underwriters at Lloyd's, London*, 2009 WL 617914, at *2 (S.D. Miss. Mar. 11, 2009) (discussing how issues of valuation of damages, including calculation of replacement cost value, actual cash value, and depreciation, in a property insurance dispute case require expert testimony). *Because the policy requires Plaintiffs to establish the "actual cash value" of any unrepaired items in order to recover for them, and because Plaintiffs have no competent evidence to calculate depreciation, Defendant's Motion [25] for Summary Judgment should also be granted as to the claims for damage to unrepaired items*.

*Id*. (some citations omitted; emphasis added).

The facts of *Hebbler* are analogous to the case *sub judice*. The District Court for the Southern District of Mississippi reached the same conclusion in other recent cases as well. *See Lowry v. State Farm Fire and Cas. Co.*, 2024 WL 5150644, at *4 (S.D. Miss. Dec. 17, 2024) ("For unrepaired items, the Policy requires a calculation of 'actual cash value,' which requires a calculation for depreciation. Courts generally require expert testimony to establish depreciation.")

7

(citations omitted); *Lee v. State Farm Fire and Cas. Co.*, 2024 WL 4525305, at *3 (S.D. Miss. Aug. 12, 2024) ("As to the claim of monetary damages, courts generally require expert testimony to establish depreciation, which is an essential component of the policy's definition of 'actual cash value.' The Lees do not have an expert on depreciation. Accordingly, the Court grants State Farm's Motion for Summary Judgment as it relates to the Lee's claims for monetary damages[.]") (internal citations and quotation marks omitted).

In her Response Memorandum [47], Elenz concedes that she does not have an expert to testify as to depreciation but takes the position that she "does not need an expert witness to establish age/life/condition of the property[.]" [47] at p. 6. She contends that she should be permitted to put on lay testimony as to the age of the damaged property which would assist in determining the actual cash value: "Plaintiff should be permitted to put forth evidence of the age, condition, life expectancy to establish depreciation and ultimately actual cash value. The Plaintiff, for instance, can put forth evidence that the dwelling was built in 1999, and that shingles on the roof are 30 year shingles. . . The Plaintiff would simply have to put on evidence of the age of the roof to determine depreciation under the insurance policy." *Id*. at p. 7.

Notably, Elenz cites no legal authority for her argument that she should be permitted to put on lay testimony to establish the actual cash value of the unrepaired items. She also does not address the numerous cases cited by State Farm which indicate to the contrary—that is, that an expert is in fact required to establish depreciation.

But she does direct the Court's attention to the District Court for the Southern District of Mississippi's decision in *Ladnier v. State Farm Fire & Cas. Co.*, 2023 WL 3830366 (S.D. Miss. June 5, 2023). There, in a factually similar case, the plaintiffs did not have an expert to testify as to depreciation, but the district court denied State Farm's request for summary judgment on that

basis. *Id*. at *5. The district court concluded that the expert's "opinion regarding replacement cost value is admissible as a component of actual cash value, subject to evidence of depreciation presented at trial." *Id*.

Elenz urges this Court to apply *Ladnier*. The Court should, according to Elenz, permit Hamlett and Gardner to testify as to replacement cost and allow her to put forth evidence of depreciation at trial.

Although relying on the summary judgment ruling in *Ladnier*, Elenz fails to acknowledge that the district court *granted a directed verdict in State Farm's favor at trial* because the plaintiffs had not put on any admissible evidence of depreciation.[5] Thus, while the *Ladnier* summary judgment ruling at first glance seems to favor Elenz's position, when considered in context, it does not.

Ultimately, the Court agrees with the myriad of cases concluding that in the absence of an expert to testify as to depreciation, a plaintiff cannot put on sufficient evidence to establish actual cash value. Therefore, Elenz cannot meet her obligation to put into evidence "with as much accuracy as possible, proof of the damages being sought." *Jackson*, 2024 WL 1183670 at *6 (quoting *Bus. Commc'ns, Inc. v. Banks*, 90 So. 3d 1221, 1225 (Miss. 2012)) (additional citation and internal quotation marks omitted).

In a last-ditch effort to preclude summary judgment, Elenz points out that State Farm caps depreciation at 80% in its own repair estimate documents. She therefore contends that, at a minimum, she should be permitted to proceed by putting on proof of replacement cost and allowing that number to be reduced by 80%. She cites no language in the policy supporting that position nor

---

[5] Neither party provided the Court a copy of the transcript of the district court's oral ruling granting directed verdict in *Ladnier*, but the Court has obtained a copy and reviewed it. *See* S.D. Miss. Cause No. 1:21-CV-407-LG-RPM, dkt. [69]. The district court's ruling was clearly based on the fact that the plaintiffs had not put on proof of depreciation.

has she cited any case law where any court has permitted a plaintiff to proceed in this fashion. As noted previously, it is *Elenz's* burden as the plaintiff to put on proof of damages "with as much accuracy as possible[.]" *Id*. She simply has no evidence to meet this standard. In the absence of any authority indicating that she can proceed in this proposed fashion, the Court declines the invitation to permit her to do so.

Because Elenz admittedly has no expert evidence as to depreciation—an essential component of damages for actual cash value—her breach of contract claim for the unrepaired items must be dismissed. Summary judgment is appropriate.

*Conclusion*

State Farm's Motion for Summary Judgment [35] is GRANTED. All claims are DISMISSED *with prejudice*. This CASE is CLOSED. A Final Judgment will issue this day.[6]

SO ORDERED, this the 12th day of September, 2025.

/s/ Sharion Aycock
SENIOR UNITED STATES DISTRICT JUDGE

---

[6] Although the Court made multiple references to the Motion to Strike [36] and considered it to some extent, it need not issue any definitive ruling on that Motion [36]. Instead, it is DENIED AS MOOT.